IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SHANNON GLADDEN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:19-CV-2938-CAP-JSA |
| THE PROCTER & GAMBLE | : | |
| DISTRIBUTING LLC, | : | |
| | : | |
| Defendant. | : | |

## O R D E R

The above-captioned action is before the Court on the Defendant's Motion to Hold a Third Party in Contempt and for Sanctions [27] ("Motion for Contempt"). Defendant, The Procter & Gamble Distributing LLC ("Defendant" or "P&G"), requests that the Court issue an Order holding a third party, Lesli Quinton Hayes, in civil contempt based on her alleged failure to respond to a subpoena issued by Defendant. For the reasons set forth below, the Defendant's Motion for Contempt [27] is **DENIED**.

## I. BACKGROUND

Plaintiff Shannon Gladden filed the Complaint initiating this action on June 26, 2019. *See* Compl. [1]. Plaintiff alleges in the Complaint that she is a former

employee of Defendant P&G[1] and that her employment was terminated in or about September of 2018. She claims that Defendant discriminated against her based on her gender, and unlawfully retaliated against her for opposing discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*.

In the Complaint, Plaintiff alleges that she was employed with P&G as a Senior Account Executive in the North America Oral Care Division, and presided over a national vendor contract with Promoveo Health ("Promoveo"). Compl. [1] at ¶ 8. According to Plaintiff, in late August of 2018, she became aware of "several potential issues with Promoveo's conduct," and, as part of her job duties, she reported her concerns about Promoveo to P&G's North American Oral Care leadership team. *Id*. at ¶¶ 13-18. Plaintiff contends that Rolando Collado, an individual who falsely represented to P&G that he was an "owner or part-owner" of Promoveo, then filed a "retaliatory complaint" against Plaintiff with P&G. *Id*. at ¶¶ 13, 21-22.

Plaintiff alleges further that, after Collado made the "retaliatory complaint" against her, she was interviewed on September 7, 2018, in an "antagonistic" fashion

---

[1] Although Plaintiff initially named "The Procter & Gamble Co." as the Defendant, Plaintiff later filed a motion to amend Defendant's name to "The Procter & Gamble Distributing LLC," which was granted by the Court as unopposed on January 9, 2020. *See* Order [15].

2

by Jen Sasse, P&G Oral Care Human Resources Manager, and Alexandra Scherting, another Human Resources Manager. *Id*. at ¶ 24. Plaintiff alleges that, on September 14, 2018, she was again interviewed by telephone by Sasse and Scherting, during which telephone call "Plaintiff raised concerns of gender bias" related to the manner in which P&G was investigating Promoveo's complaint. *Id*. at ¶ 28. Plaintiff also alleges that later on September 14, 2018, she called her direct supervisor Dave Shull "to discuss Promoveo's wrongdoings." *Id*. at ¶ 29.

Plaintiff alleges that another Human Resources Manager, Sarah Davies, directed her to attend a meeting with two human resources managers outside the P&G Oral Care department. *Id*. at ¶ 32. According to Plaintiff, she attended two meetings in Cincinnati on September 21 and 27, 2018, with representatives who identified themselves as "Dan" and "Crystal." *Id*. at ¶ 33. Plaintiff describes these meetings as "antagonistic in nature," and claims that, at the second meeting, "Dan" and "Crystal" confiscated her company laptop, demanded her computer access password, and advised her that she was being placed on administrative leave. *Id*. Thereafter, on September 28, 2018, Shull, Plaintiff's supervisor, sent Plaintiff an email demanding that she return her work computer, iPhone, and iPad. *Id*. at ¶ 34. Plaintiff claims that she contacted numerous P&G managers "to get clarity regarding her job status," but she "heard no further" from Shull or other management, and instead, P&G "terminated her employment." *Id*. at ¶¶ 37-38.

The discovery period in this action began on November 1, 2019, and after two extensions, discovery is scheduled to end on September 4, 2020. *See* Order [25]. On May 29, 2020, Defendant P&G filed a Motion for Contempt [27] requesting that the Court hold a third party, Lesli Quinton Hayes, in civil contempt based on her alleged failure to respond to a subpoena issued by P&G. According to P&G, Ms. Hayes is a neighbor of the Plaintiff, and was an employee of Promoveo whose employment was terminated or about August 29, 2018. Def. Br. [17-1] at 3. P&G alleges that, after Ms. Hayes was terminated by Promoveo, Plaintiff began to make "a number of strange inquiries of Promoveo and its employees," while Ms. Hayes and a purported representative identified as "Stan Cruz" engaged in threatening behavior towards Promoveo and P&G and their employees. *Id*. at 3-6. P&G contends that Ms. Hayes and "Cruz" sent emails to P&G employees that contained information that only someone familiar with internal P&G matters and meetings that Plaintiff attended would know. *Id*.

In particular, P&G contends that, between September 29 and November 9, 2018, Ms. Hayes sent P&G employees and representatives "multiple emails that also included attached excerpts from audio records that could have only been made by Gladden," including audio recordings of the September 14, 2018 meeting that Plaintiff had with Sasse and Scherting; the September 20 and 27, 2018 meetings that Plaintiff had with Dan and Crystal; and one other recorded conversation between

Plaintiff and her supervisor Shull. *Id*. at 7. Ultimately, P&G alleges, Ms. Hayes's conduct led to her facing criminal charges for harassing communications and stalking.[2] *Id*.

P&G contends that, on December 26, 2019, it served an initial subpoena on Ms. Hayes requesting that she produce "all e-mails in [her] possession, custody, or control, that were sent from or received at [a list of her known email addresses] and that relate[d] to [P&G], Shannon Gladden's employment with P&G, Shannon Gladden's claims against P&G, Shannon Gladden's complaints about P&G, and all other e-mails that discuss or refer to Shannon Gladden or P&G." *Id*. at 9; Def. Ex. A [27-2], Schwartz Decl. at ¶ 26. P&G admits that Ms. Hayes responded to this subpoena on January 9, 2020, by forwarding approximately 250 emails to P&G's counsel, including Ms. Hayes's correspondence to P&G and some correspondence from P&G to Ms. Hayes. *Id*. at 9; Schwartz Decl. at ¶¶ 27-31. P&G contends that the production did not include any emails between Plaintiff and Ms. Hayes "demonstrating how Ms. Hayes came into possession of the relevant audio recordings and other non-public P&G information she was emailing P&G employees." *Id*.

---

[2] P&G states that, on information and belief, on February 27, 2020, Ms. Hayes entered a pre-trial intervention program as an alternative to prosecution. *Id*. at 7.

P&G contends that, on March 11, 2020, it served a letter and a second subpoena on Ms. Hayes requiring her to present for her deposition and produce the following documents to P&G's counsel on April 15, 2020: (1) all audio recordings related to P&G that Ms. Hayes received from Plaintiff; (2) all audio recordings related to any meetings Plaintiff had with representatives of P&G; (3) all documents and records evidencing or relating to Ms. Hayes sending or receiving any audio recordings or other information about P&G that is in any way related to Plaintiff; and (4) all communications between Plaintiff, Ms. Hayes, and the individual identified as "Stan Cruz" for the period of January 1, 2017, through the present. *Id.* at 10; Schwartz Decl. at ¶ 32. According to P&G, it expanded its request back to January 1, 2017, because it "reasonably believes Gladden and Hayes were engaged in coordinated activities related to P&G during a much broader timeframe than August 2018-January 2019, and P&G wanted to ensure that it captured relevant and probative information related to this case." *Id.*

As a result of the COVID-19 pandemic, P&G states that it postponed Ms. Hayes's deposition, but did not postpone her obligation to produce responsive documents and records. *Id.*; Schwartz Decl. at ¶ 33. P&G alleges that it advised Ms. Hayes of this fact on at least two occasions and provided her multiple ways to produce the documents and records. *Id.* According to P&G, after Ms. Hayes failed to produce responsive records, P&G's counsel attempted to resolve the dispute

without involving the Court, but Ms. Hayes refused to produce the responsive records. *Id*.; Schwartz Decl. at ¶¶ 36-37.

On June 12, 2020, Ms. Hayes filed a *pro se* Response [28] in which she states that she has "produced all relevant and probative audio recordings and other documents and records in response to two subpoenas." Resp. [28] at 1. On June 26, 2020, P&G filed a Reply Brief [29] in support of its Motion for Contempt.

## II.   DISCUSSION

The Federal Rules of Civil Procedure provide for a broad scope of discovery regarding any information relevant to any party's claim or defense, so long as it is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*Id.* Subject to those considerations, the Court may limit discovery when:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action;

or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

Rule 45 of the Federal Rules of Civil Procedure allows parties to obtain testimony or documents from third parties pursuant to the same or similar substantive standards that apply to party discovery under Rule 26(b)(1). *AFSCME Council 79 v. Scott*, 277 F.R.D. 474, 476 (S.D. Fla. 2011). "Indeed a properly issued and served subpoena provides a court with jurisdiction over a non-party witness within the court's territorial jurisdiction with respect to the discovery requested in the subpoena." *Smith v. Pefanis*, 652 F.Supp.2d 1308, 1338 (N.D. Ga. 2009) (Forrester, J.) (quoting *Hernandez v. Tregea*, No. 2:07–cv–149–FtM–34SPC, 2008 WL 3157192, at *3 (M.D.Fla. Aug. 4, 2008)).

A subpoena served under Rule 45 may "command each person to whom it is directed to do the following at a specified time and place: attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises." Fed. R. Civ. P. 45(a)(1)(A)(iii). In particular, Rule 45 specifically contemplates the use of a subpoena to produce documents. *See* Fed. R. Civ. P. 45(a)(1)(D) ("A command in a subpoena to produce documents, electronically stored information, or tangible things requires the responding person to permit inspection, copying, testing, or sampling of the materials."). The issuing party must, however, take care "to avoid

8

imposing an undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

A person subject to a subpoena may serve written objections to a subpoena commanding the production of documents within 14 days after the subpoena is served or the time specified for compliance, whichever is earlier. Fed. R. Civ. P. 45(d)(2)(B). If an objection is made, "on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). Rule 45 further provides that, in the event that a person subject to a subpoena fails to respond to the subpoena, or a court order related to it, without an adequate excuse, the court may hold that person in contempt. *See* Fed. R. Civ. P. 45(g) ("The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.").

In the Motion for Contempt [27], P&G seeks to hold Ms. Hayes in civil contempt under Rule 45(g) for her purported failure to comply with the subpoena issued to her directing her to produce certain documents related to the issues in this case. *See* Def. Br. at 12. "Civil contempt is a process used by a Court to compel compliance with a subpoena or court order." *Smith*, 652 F.Supp.2d at 1339 (quoting *Bray & Gillespie Management LLC v. Lexington Ins. Co.*, No. 6:07–cv–222–Orl–

98KRS, 2008 WL 4371345, at *4 (M.D.Fla. Sept. 22, 2008)). "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *S.E.C. v. First Fin. Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. 1981). Thus, civil contempt occurs when a party disobeys a specific and definite court order by failing to take all reasonable steps within that party's power to comply with the order. *See In re Dual–Deck Video Cassette Recorder Antitrust*, 10 F.3d 693, 695 (9th Cir. 1993).

"Courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Smith*, 652 F.Supp.2d at 1339 (quoting *Old Nat'l Bank v. Goldberg & Assocs., LLC*, No. 08–80078–CIV, 2009 WL 813019, at *2 (S.D.Fla. Mar. 23, 2009)). In order for a court to hold an alleged violator in civil contempt, the party moving for contempt must prove by "clear and convincing evidence" that: "(1) a valid court order was in effect; (2) the order was clear and unambiguous; and (3) the alleged violator could have complied with the court's order, had he chosen to do so." *Id*. (quoting *Taylor v. Teledyne Technologies, Inc.*, 338 F.Supp.2d 1323, 1345–46 (N.D.Ga. 2004) (citations omitted)); *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990); *see also United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 899 F.2d 143, 146 (2d Cir. 1990) ("A federal court may punish contempt of a lawful order, whether the

order issues directly from the court or from a consent decree agreed to by the parties.").

District courts have "wide latitude in determining whether there has been contemptuous defiance of its order." *Hook v. Ariz. Dep't of Corr.*, 107 F.3d 1397, 1403 (9th Cir.1997). There is no requirement that the contempt be "willful," nor is there any "good faith" exception to the requirement of obedience to a court order. *In re Dual–Deck*, 10 F.3d at 695 (quoting *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987)); *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1989). The party moving for a finding of civil contempt, however, must demonstrate the act of contempt by clear and convincing evidence. *See Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir. 2002); *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000); *see also Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998); *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995*); Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982).

When it has been established by clear and convincing evidence that a party has violated a court order, the burden shifts to that party to show an inability to comply. *United States v. Rylander*, 460 U.S. 752, 757 (1983); *see also Smith*, 652 F.Supp.2d at 1339 ("once the moving party makes a prima facie showing that the

court order was violated, the burden of production shifts to the alleged contemnor to show a present inability to comply that goes beyond a mere assertion of inability") (quoting *Howard Johnson Co.*, 892 F.2d at 1516 (internal marks and citations omitted)). Thus, "the focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *Id*. at 1339-40 (quoting *Howard Johnson Co.*, 892 F.2d at 1516). "Conduct that evinces substantial, but not complete, compliance with the court order may be excused if it was made as part of a good faith effort at compliance." *Id*. at 1340 (quoting *Howard Johnson Co.*, 892 F.2d at 1516).

Under the Federal Magistrates Act, United States magistrate judges have limited power to exercise contempt authority. *See* 28 U.S.C. § 636(e). Magistrate judges are authorized to exercise contempt authority in certain limited circumstances, including summary criminal contempt authority, which may be imposed for conduct that occurred "in the magistrate judge's presence so as to obstruct the administration of justice," as well as criminal contempt and civil contempt authority in misdemeanor cases and in cases in which the magistrate judge presides with the consent of the parties. 28 U.S.C. §§ 636(e)(2), (3), (4). In civil cases in which the parties have not consented to the jurisdiction of the magistrate

judge, if a party commits an act that constitutes a civil contempt, the Federal

Magistrates Act requires a magistrate judge to certify the facts to a district judge:

> [T]he magistrate judge shall forthwith certify the facts to a district judge
> and may serve or cause to be served, upon any person whose behavior
> is brought into question under this paragraph, an order requiring such
> person to appear before a district judge upon a day certain to show cause
> why that person should not be adjudged in contempt by reason of the
> facts so certified. The district judge shall thereupon hear the evidence
> as to the act or conduct complained of and, if it is such as to warrant
> punishment, punish such person in the same manner and to the same
> extent as for a contempt committed before a district judge.

28 U.S.C. § 636(e)(6); *see also Smith v. Pefanis*, 652 F.Supp.2d 1308, 1315-16 (N.D.

Ga. 2009).

In cases such as the instant case, in which the magistrate judge is acting under

the authority granted in 28 U.S.C. § 636(b), that procedure sets forth three scenarios

that require the magistrate judge to certify facts to the district judge: (i) the alleged

act constitutes a serious criminal contempt committed in the presence of the

magistrate judge; (ii) the alleged act constitutes a criminal contempt but occurred

outside the presence of the magistrate judge; and (iii) the act constitutes a civil

contempt. 28 U.S.C. § 636(e)(6)(B). Certification of the facts is thus required under

this section of the Act only when the magistrate judge is satisfied that one of the

three enumerated scenarios is present.

Under this certification process, upon a motion for civil contempt, a

magistrate judge may conduct a hearing, but the magistrate judge "functions only to

'certify the facts'" and does not have the authority to issue an order of contempt. *Church v. Steller*, 35 F.Supp.2d 215, 217 (N.D.N.Y. 1999) (citing *Litton Sys., Inc. v. AT & T*, 700 F.2d 785, 827 (2d Cir.1983)); *Gomez v. Scoma's, Inc.*, No. C–94–4452, 1996 WL 723082, at *3 (N.D.Cal. 1996) (holding that a magistrate judge's duty "is simply to investigate whether further contempt proceedings are warranted, not to issue a contempt order"); *see also In re Kitterman*, 696 F.Supp. 1366, 1370 (D. Nev. 1988); *NLFC, Inc. v. Devcom Mid–America, Inc.*, No. 93C0609, 1994 WL 188478, at *6 (N.D.Ill. May 11, 1994). In certifying the facts under Section 636(e), the magistrate judge must "determine whether the moving party can adduce sufficient evidence to establish a *prima facie* case of contempt." *Church*, 35 F.Supp.2d at 217 (citing *Proctor v. State Gov't of N.C.*, 830 F.2d 514, 521 (4th Cir. 1987)). The accepted procedure is for the magistrate judge to certify the facts supporting a finding of contempt within a Report and Recommendation issued under 28 U.S.C. § 636(b)(1)(B). *See NLRB v. Steele*, No. 07-CV-50712, 2008 WL 474077, at *3 (E.D. Mich. Feb. 19, 2008) (citing *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041,1045 (6th Cir.1996)).

When a magistrate judge has certified facts supporting a finding of contempt, the district judge is then required to conduct a *de novo* hearing at which issues of fact and credibility determinations are to be made. *See Taberer v. Armstrong World Indus., Inc.*, 954 F.2d 888, 907-08 (3d Cir. 1992) (holding that it was error for the

district court not to conduct a *de novo* hearing on the evidence after the magistrate judge issued a certification of facts in support of contempt).

In this case, P&G seeks to hold Ms. Hayes in civil contempt under Rule 45(g) for her purported failure to comply with the subpoena issued to her directing her to produce certain documents related to the issues in this case. *See* Def. Br. at 12. P&G argues that Ms. Hayes must be in possession of "relevant and probative audio recordings and other documents and records," but she has refused to produce those audio recordings and other documents in response to a subpoena issued by P&G. *Id*. at 1. P&G contends that Ms. Hayes possesses: (1) relevant audio recordings created by Plaintiff Shannon Gladden; (2) relevant documents and records related to the editing and transmission of those audio recordings; (3) relevant records reflecting the sharing of information and recordings between Plaintiff and Ms. Hayes, and (4) other relevant information, all on devices, email addresses, and other sources. *Id*.

The Court must first determine whether P&G has presented clear and convincing evidence that Ms. Hayes has failed to comply with the subpoena issued to her. If the Court finds that P&G has presented clear and convincing evidence that Ms. Hayes has failed to comply with the subpoena, the Court must then consider whether Ms. Hayes has made a sufficient factual showing that she had an inability to comply that goes beyond a mere assertion of an inability to comply. Finally, if the Court finds that there is a sufficient factual basis to support a finding of civil

15

contempt, the undersigned may issue a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) certifying the facts in support of civil contempt and recommending that the District Judge hold a *de novo* hearing to determine whether Ms. Hayes should be held in civil contempt.

Based on a review of the facts and arguments submitted by the parties, the Court finds that P&G has failed to present clear and convincing evidence that Ms. Hayes has failed to comply with the subpoena issued to her. First, the Court notes that, before filing the Motion for Contempt [27], P&G failed to file any motion to compel requesting a Court Order requiring Ms. Hayes to comply with the subpoena. While not strictly required by Rule 45, the Rule provides that, if an objection is made, "on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

As noted above, Ms. Hayes, proceeding *pro se*, filed a response to P&G's Motion for Contempt. *See* Resp. [28]. In her Response, Ms. Hayes states that she has "worked to respond appropriately to both the first and second subpoenas issued by [P&G]." *Id*. at 1. She alleges that she responded to P&G multiple times, produced the responsive documents purportedly in her possession, and finally communicated to P&G that she had no further documents to produce:

> I have supplied documents as P&G requested on January 9, 2020, in response to their first subpoena. I communicated with P&G's attorneys on March 19, 2020, April 1, 2020, and May 1, 2020 to try and understand what more they are looking for in their second subpoena. My last communication to P&G on May 1, 2020 was an explanation that I did not have any further documents to produce . . . . P&G never provided clarity on my production, instead they filed a frivolous motion for contempt.

*Id*. at 1-2.

While Ms. Hayes does not claim that she specifically served P&G with a document titled an "Objection," P&G does not dispute her contention that she communicated to it that she had no further documents to produce that were responsive to the subpoena. Indeed, P&G even admits that Ms. Hayes responded to the subpoena on January 9, 2020, by forwarding approximately 250 emails to P&G's counsel. Def. Br. at 9; Schwartz Decl. at ¶¶ 27-31. Thus, when P&G received the communication from Ms. Hayes that she had no further responsive documents to produce, the best practice would have been for P&G to fully exhaust its remedies before resorting to the extreme remedy of contempt, by filing a motion under Rule 45(d) requesting an order compelling production. *See* Fed. R. Civ. P. 45(d)(2)(B)(i).

Moreover, in a case from this District cited by P&G in its brief, *Smith v. Pefanis*, the Court noted that, in order for a court to hold an alleged violator in civil contempt, the party moving for contempt must prove by "clear and convincing evidence" that "a valid court order was in effect" and the "order was clear and unambiguous." *Smith v. Pefanis*, 652 F.Supp.2d 1308, 1339 (N.D. Ga. 2009). While

the Court noted that "[a] subpoena issued on behalf of the court should be treated as a court order," in that case, Magistrate Judge Vineyard had entered an order compelling non-party witnesses to produce specific documents responsive to the subpoena at issue, and it was only after the witnesses failed to comply with that order that Judge Vineyard had recommended that the District Court order the witnesses to show cause why they should not be held in contempt. *Id*. at 1338-39 (quoting *DeVolk v. JBC Legal Group, P.C.*, No. 8:04–CV–1275–T30–EAJ, 2008 WL 1777740, at *1 (M.D.Fla. Apr. 18, 2008)).

In this case, by contrast, the Court has not been involved in any way in P&G's subpoena, and has not approved the scope of the demands, or ordered compliance. In other words, P&G is ascribing its own unilateral subpoena, that has never been reviewed by the Court or enforced by the Court, and that has been the subject of apparent *pro se* objections that have never been presented to the Court to adjudicate, with the status of a Court order. That is a very different scenario than was presented in *Smith* and the majority of contempt cases, and is not a just or efficient way to proceed at least in this case. *See generally,* Fed. R. Civ. P. 1 ("[The Federal Rules of Civil Procedure] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

In any event, even if the Court were to treat the subpoenas issued to Ms. Hayes by P&G as orders from the court, the Court finds that P&G has failed to present clear and convincing evidence that she failed to comply with the subpoenas. First, as noted, it appears to be undisputed that Ms. Hayes produced at least 250 emails to P&G in response to the subpoenas. *See* Def. Br. at 9. P&G nevertheless contends that "at a minimum," Ms. Hayes has not produced: "(1) relevant audio recordings created by Gladden, (2) documents and records showing the transmission of those recordings between Gladden and Hayes, and (3) documents and records showing the transmission of other information between them." *Id*. at 11.

As noted above, in the Complaint, Plaintiff alleges that, on September 14, 2018, she was interviewed by telephone for a second time by Jen Sasse, P&G Oral Care Human Resources Manager, and Alexandra Scherting, another Human Resources Manager, during which telephone call "Plaintiff raised concerns of gender bias" related to the manner in which P&G was investigating Promoveo's complaint. Compl. at ¶ 28. In its brief, P&G focuses on the audio recording of this September 14, 2018 telephone call that was allegedly made by Plaintiff and somehow transmitted by Plaintiff to Ms. Hayes. *See* Def. Br. at 11.

According to P&G, on September 29, 2018, Ms. Hayes sent an email to P&G employees with an attached excerpt from an audio recording of the Plaintiff's

"meeting" with Sasse and Scherting on September 14, 2018.[3] Def. Br. at 11;
Schwartz Decl. at ¶¶18, 21; Sasse Decl. ¶¶14-17. P&G contends that neither Sasse
nor Scherting made this audio recording, so it must have been made by Plaintiff, as
Plaintiff has admitted in interrogatories that the only attendees at this meeting were
Sasse, Scherting, and herself. Def. Br. at 11; Sasse Decl. at ¶¶ 7-13; Scherting Decl.
at ¶¶ 7-13; Schwartz Decl. at ¶ 23; Exh. 1, Schwartz Dec. 000198.

Although Ms. Hayes apparently had an excerpt of this audio recording in her
possession on or about September 29, 2018, when she sent an email containing the
excerpt to P&G employees, P&G argues that "the full recording and documents
evidencing how and when it came into Hayes's possession have never been produced
by Gladden or Hayes." Def. Br. at 11; Schwartz Decl. at ¶¶ 18-37. P&G further
contends that Ms. Hayes also has not produced any documents evidencing how she
came into possession of all the other audio recordings and related information she
sent P&G employees. *Id*. According to P&G, in response to the subpoenas, Ms.
Hayes produced her September 29, 2018, email to P&G with the excerpt of the audio
recording, but she "did not produce any documents or records showing the trail of

---

[3] Although Plaintiff alleges in the Complaint that she was interviewed by Sasse and
Scherting by telephone on September 14, 2018, Defendant contends that Sasse and
Scherting met with Plaintiff using WebEx, a virtual meeting application, and P&G
refers to this incident as a "meeting." *See* Def. Br. at 5, 11; Schwartz Decl. at ¶ 14;
Sasse Decl. at ¶¶ 7-13; Scherting Decl. at ¶¶ 7-13.

the audio recording's editing and transmission from Gladden to Hayes." *Id*. at 2. P&G contends that "[t]hese records must exist because Gladden made the audio recording and had to transmit it to Hayes in some way." *Id*. Thus, P&G contends, "[t]he records sought by P&G are only in the possession of Gladden and Hayes." *Id*. at 14.

In sum, P&G argues, Ms. Hayes's refusal to produce relevant audio recordings, documents, and records has denied P&G relevant and probative discovery, and her refusal to produce the recordings, documents, and records responsive to P&G's subpoenas "is a sanctionable act of contempt under Rule 45." *Id*. at 2.

In the Response [28] filed by Ms. Hayes, she states that she has "produced all relevant and probative audio recordings and other documents and records in response to two subpoenas." Resp. [28] at 1. According to Ms. Hayes, she "do[es] not have any further information to provide to P&G." *Id*. at 3. Ms. Hayes contends that, although P&G canceled her deposition on April 2, 2020, it is now "trying to use this motion to get me to explain how I came to be in possession of these recordings without deposing me." *Id*. With respect to the audio recording from the meeting or telephone call held on September 14, 2018, between Plaintiff, Sasse, and Scherting, Ms. Hayes states as follows:

> P&G wants documents as to how I received a clip of a September 14, 2018 recording. There are no such documents. There are several ways to share files without an email documenting it. One can play the original audio and record on a sound device. One can share files via mail with a flash drive. One can airdrop a file from one device to the next. None of these examples create lasting documentation to share with P&G.

*Id*. at 5.

In P&G's reply brief, it again argues that Ms. Hayes "must" have documents that reflect her communications with the Plaintiff because the information contained in Ms. Hayes's emails to P&G could only have come from Plaintiff. *See* Def. Reply Br. [29] at 4. P&G contends that the Plaintiff has produced at least one email indicating that she and Ms. Hayes communicated in emails about this case. *Id*. at 5. P&G argues, however, that "Hayes (and Gladden) expect P&G and this Court to believe this is the only e-mail, text, instant message, electronic log, or other documented correspondence of any kind from Gladden to Hayes that illustrates their sharing of P&G-related information between September 7, 2018, and January 2019 that relates to this case. This is not believable." *Id*. at 5-6.

Further, with respect to the audio recording of the meeting on September 14, 2018, P&G states that, after it filed the Motion for Contempt, the Plaintiff ultimately produced the audio recording from that meeting. *Id*. at 7. P&G contends, however, that the version of the audio recording that was produced by Plaintiff is in an MP4 format, while the excerpted version that was produced by Ms. Hayes was in the MP3 format. *Id*. According to P&G, "[s]till missing from any production from Hayes are

22

the e-mails, texts, instant messages, or other electronic documents and records illustrating how and when all this information was transmitted and edited. Given the prevalent use of electronic devices by Hayes to communicate and harass P&G, it defies logic that no such documents and records exist." *Id*. at 8. P&G argues that, even if the audio recording had been transmitted by Plaintiff to Ms. Hayes by thumb drive or airdrop, there would be an "independent recording with metadata on it showing how and when it was created, transferred, and edited," and "[t]hese are documents." *Id*. at 8-9.

Based on a review of the parties' arguments and evidence submitted, the Court finds that P&G has failed to present clear and convincing evidence that Ms. Hayes has relevant documents in her possession that she has failed to produce in response to the subpoenas issued to her by P&G. First, P&G spends much of its brief arguing that the Plaintiff herself has failed to cooperate with discovery and has failed to produce relevant documents, including the audio recordings that she allegedly made of her meetings with P&G management. Significantly, however, P&G has not requested the assistance of the Court in resolving any purported discovery dispute with the Plaintiff in accordance with the requirements of the Scheduling Order. *See* Scheduling Order [7] at 2-3. While Plaintiff may or may not be uncooperative in discovery, that issue is not before the Court; clearly, filing a Motion for Contempt

against Ms. Hayes is not the proper method to coerce the Plaintiff into cooperating or producing more documents.

Second, and more importantly, P&G has simply presented no proof that Ms. Hayes has failed to provide documents or materials that are within her possession, custody or control. Instead, its arguments are largely based on speculation and assumptions about what documents may be in her possession. P&G has shown that, on or around September 29, 2018, Ms. Hayes was in possession of an excerpt of an audio recording from a September 14, 2018 meeting attended by Plaintiff, Sasse, and Scherting, because Ms. Hayes sent emails to P&G employees that included an excerpt of that audio recording. But P&G admits that Ms. Hayes has produced those emails and the audio excerpt that was attached to those emails. Beyond that excerpt that Ms. Hayes sent to P&G employees, P&G has no evidence to support its claim that Ms. Hayes must be in possession of other documents related to that recording.

While P&G argues that Ms. Hayes "must" have other documents showing how she obtained the audio recordings or other files at issue, she denies that any such documents exist or are in her custody or control. Because P&G has not deposed Ms. Hayes to inquire how she obtained the audio recording at issue, there is simply no factual basis at this point that would constitute "clear and convincing evidence" that Ms. Hayes is in possession of any responsive document that she has failed to produce to P&G. Instead, based on the information provided by the parties, it may

24

be that Plaintiff is, or was, in possession of the documents at issue, while Ms. Hayes, who may have been given an edited version of the audio recording, has produced the only version Plaintiff shared with her. Based on the information provided by the parties, it is simply impossible to know whether Ms. Hayes is in possession of any other documents responsive to the subpoenas.

Moreover, it appears to be undisputed that Ms. Hayes has produced at least 250 emails in response to the subpoenas from P&G. Even if the Court assumed that there may be other relevant documents in her possession that she has not produced, she has shown that she has made a "good faith effort" to comply with the subpoenas, which demonstrates that a finding of civil contempt is not warranted at this time. *See Smith v. Pefanis*, 652 F.Supp.2d 1308, 1340 (N.D. Ga. 2009) ("Conduct that evinces substantial, but not complete, compliance with the court order may be excused if it was made as part of a good faith effort at compliance.") (quoting *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990)).

Accordingly, the undersigned finds that Defendant's Motion to Compel [27] should be **DENIED** at this time, because Defendant has failed to demonstrate by clear and convincing evidence that Ms. Hayes failed to comply with the subpoenas issued by P&G. This denial is without prejudice to P&G's refiling another motion for contempt in the event that it obtains more information during discovery that

would provide a sufficient factual basis for the Court to find that Ms. Hayes was in possession of relevant documents that she failed to produce to P&G.

## III.   CONCLUSION

Accordingly, for all of the reasons discussed above, the Defendant's Motion for Contempt [27] is **DENIED**. The Clerk is **DIRECTED** to serve a copy of this Order on Lesli Quinton Hayes at her mailing address provided in her response: 302 Oak Lawn Ct., Peachtree City, GA 30269.

**IT IS SO ORDERED** this 20th day of July, 2020.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE